## HARMON *v.* WINEGAR.

### Opinion delivered February 19, 1923.

1. HUSBAND AND WIFE—LIABILITY OF WIFE'S PROPERTY FOR HUSBAND'S DEBTS.—The creditor of an insolvent husband, seeking to have his wife's property subjected to payment of his debts, must prove that he gave credit to the husband upon the faith of, and in the reasonable and justifiable belief in, the fact that the husband was the actual owner of the property in controversy, and without notice of any facts and circumstances that would lead to the belief that such property was claimed by the wife.

2. HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY.—Where the wife
of an insolvent debtor with her own means purchased and after-
wards foreclosed a mortgage on a farm and bought in the
property, intending to sell the property to her husband, *held,* in
the absence of proof that the husband had possession or that
she permitted him to use it as a source of credit, the land is not
subject to his debts.

3. HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY.—An automobile
given to an insolvent debtor's wife in appreciation of medical
services rendered to a patient by the debtor is not subject to
his debts, in the absence of proof that it was intended as payment
for such services, or that it was used by the debtor as the basis
of credit.

4. HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY.—Where the
furniture of an insolvent doctor's office was the property of his
wife, it is not subject to payment of his indebtedness where the
debt was not contracted on the faith of his ownership of the
furniture.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

STATEMENT OF FACTS.

Bertha Harmon first brought this suit in the circuit court against E. F. Winegar to recover the amount due her on two promissory notes, dated respectively Nov. 2, 1916, and Feb. 20, 1917, and also for $100 in cash furnished the defendant by the plaintiff in October, 1918. The first note was for $1,203.77 and the second for $300, and each was due one year after date.

Subsequently the complaint was amended by making Melissa Winegar, the wife of E. F. Winegar, a party to the suit. It was alleged that E. F. Winegar was the owner of certain real property, the title to which was taken in his wife's name for the purpose of defrauding his creditors in the collection of their debts against him. It was also alleged that the title to certain office furniture used by the defendant, E. F. Winegar, in his office was taken in his wife's name for the purpose of defrauding his creditors. The same allegation was made concerning an automobile.

Mrs. Melissa Winegar denied the allegations of the amended complaint, and moved to transfer the cause to

equity. The plaintiff agreed to the motion, and the cause was transferred and tried in the chancery court.

C. D. Harmon, a young man twenty-seven years of age, and the son of the plaintiff, Bertha Harmon, was the principal witness for her. According to his testimony, the notes sued on were made payable to himself, and indorsed by him to his mother. The notes were given to secure money borrowed by E. F. Winegar from Bertha Harmon. The witness had no interest in the matter, and simply negotiated the loan for his mother. The witness always cared for his mother's business. He had known Dr. Winegar for fourteen years, and after he became a man he began to work for Dr. Winegar. Dr. Winegar and his associate, a Mr. Onffroy, contemplated building a sanitarium near the city of Hot Springs, Ark., which should cost $10,000,000, and they devoted several years to the promotion of the enterprise. Dr. Winegar at different times, while C. D. Harmon was in his employment, told the latter that all of his property was in his wife's name. It does not appear whether he told Harmon this before or after the money was loaned to Dr. Winegar. After spending a good deal of time and money in promoting the $10,000,000 sanitarium, the enterprise failed, and it turned out that Onffroy and Dr. Winegar were insolvent. The witness also testified that subsequently an effort was made to get Mrs. Winegar to sign the notes, but that she refused to do so.

Mrs. Melissa Winegar was a witness for herself. According to her testimony, her father during his lifetime first gave her money with which to buy a home in Hot Springs, and she did so. Subsequently her father gave her $10,000 with which to improve her home, and she let her husband have that to promote his $10,000,000 sanitarium. After her father's death she received $40,000 as her part of his estate. She let her husband have all of this amount to promote his $10,000,000 sanitarium, and the understanding between them was that, if the enterprise was a success, he would pay her back, and, if not, she realized that he would be unable to re-

pay her. During the course of the promotion of the san-
itarium a tract of land known as the Barry farm near
Hot Springs was selected as a probable site on which
to locate the sanitarium. There were three mortgages
on the farm, which were purchased by Mrs. Winegar for
the sum of $4,000. She mortgaged her home to secure
the money with which to purchase these mortgages.
Subsequently she brought suit to foreclose the mort-
gages so assigned to her, and the principal and interest
at that time amounted to $7,500. A decree of fore-
closure was duly entered of record in the chancery court,
and at the foreclosure sale Mrs. Winegar became the
purchaser of the land. She acquired title to the auto-
mobile in this way: Her husband had treated a wealthy
oil man and other members of his family as a physician
and surgeon. The oil man was so pleased with his ser-
vices that he purchased the automobile and gave it to
Mrs. Winegar in 1919. It was the intention of the two
families to take a trip out West in the car. The oil man
gave her the car because she could drive one and her
husband could not.

Mrs. Winegar gave her testimony by a deposition
in September, 1921. According to her testimony, she
purchased the office furniture in 1913 and paid some-
thing like $1,900 for it. She exhibited the receipted bill
for it. She said that her husband ran a small sanitarium
in connection with his office as a physician and surgeon
in Hot Springs, Ark., and that she purchased this fur-
niture for his use there, and it was understood that she
was to be paid by receiving the rent from the rooms
which he used as a sanitarium. She acquired the money
from her father with which to purchase the furniture.

It was decreed by the chancery court that the plain-
tiff should have judgment against E. F. Winegar for
the amount sued for, and it was further decreed that the
complaint as to the defendant, Melissa Winegar, should
be dismissed for want of equity. The plaintiff has
appealed.

*A. J. Murphy,* for appellant.

*R. G. Davies,* for appellee.

HART, J., (after stating the facts). To reverse the
decree the plaintiff relies upon the case of *Maloney* v.
*Hale,* 153 Ark. 462. In that case the court held that,
where a wife permitted her husband to use her money
and personal property as an apparent basis of credit,
she is estopped from claiming the property as against
one who extended credit to her husband on the faith
thereof. In that case the husband failed in business, and
about a year afterwards he again engaged in business
in the name of Hale & Co. The wife claimed the busi-
ness, and said that she obtained the money with which to
start it from her brother-in-law. The business was con-
ducted solely by the husband under the name of Hale
& Co. for many years. The wife never gave any atten-
tion whatever to the business. The husband obtained
credit on the faith of its being his own business. The
money of the wife and the business skill and industry
of the husband could not be separated. There was no
question but that the creditors extended credit to the
husband on the faith that it was his own business. He
had no other basis of credit. Hence the court held
that, the plaintiff having given the husband credit on
the faith of his supposed ownership of the business, it
would be a fraud on him for the wife to be allowed to
claim the business. In cases of this sort, however, it is
essential, in order that the plaintiff may invoke this
estoppel against the wife, that he should have given
credit to the husband upon the faith of, and in the rea-
sonable and justifiable belief in, the fact that the hus-
band was the actual owner of the property in contro-
versy, and without notice of any facts and circumstances
that would lead to the belief that the property was
claimed by the wife.

In the present case the wife mortgaged her home-
stead to secure the money with which she purchased the
mortgages on the Barry farm. It is true that she did
this with the view of selling the farm to the corporation

promoted by her husband for use in erecting a large sanitarium. The motive which prompted her to make the purchase, however, cuts no figure in the case. The fact remains that she did purchase the mortgages with her own money. It is also insisted that she purchased the mortgages for less than their face value. This did not make any difference. That was a matter which solely concerned the mortgagees. The validity of their mortgages is not even questioned by the plaintiff. Mrs. Winegar had a right to foreclose the mortgages after they were assigned to her and to purchase the mortgaged land at the foreclosure sale. It is not shown that the husband had possession of the land or that his wife permitted him to use it as a source of credit.

The evidence also shows that the automobile was given her by a wealthy oil man in token of his appreciation of professional services rendered him and members of his family by Dr. Winegar. It is not shown that the automobile was given as a part payment for these medical services. The evidence shows that it was a gift, pure and simple, to the wife, and we are not concerned with the motive which prompted the gift, in the absence of a showing that it was intended as a payment, in whole or in part, for the medical services performed upon the giver by her husband. It is not shown that the husband used it as a basis of credit.

With regard to the office furniture, the case is not so plain, but we are of the opinion that the finding of the chancellor in favor of Mrs. Winegar on this point is not against the preponderance of the evidence. The evidence is plain that Mrs. Winegar bought the furniture and paid for it. She exhibited the receipted bill which she obtained from the dealer who sold her the furniture. She testified to the amount of money that her father gave her, and the large amount inherited from him after his death. She gave the place where he died, and the records there would have shown the falsity of her testimony as to the amount that she received when her father's estate was administered upon and dis-

tributed to his heirs. No contradiction of her testimony in this respect was made. Hence, if the plaintiff has any standing in this case as to the furniture, it must be upon principles of equitable estoppel on the ground that Mrs. Winegar permitted her husband to take possession of it and acquire credit on the strength of it, and, the plaintiff having given him credit on the faith of his supposed ownership of it, it would be a fraud on her for Mrs. Winegar to now claim that the furniture is hers.

According to the testimony of Mrs. Winegar, she at all times claimed the furniture and collected the rent on it while it was in her husband's possession. The chief source of her husband's income as a physician and surgeon would necessarily arise from his professional services, and his office furniture would be merely an incident to his profession.

It does not even appear that he obtained the loan from the plaintiff on account of having this furniture. He was engaged with an associate, who also had signed the note sued on, in promoting a $10,000,000 enterprise. Both Dr. Winegar and his associate spent large sums of money and much time in promoting this enterprise. The plaintiff thought that it would be a success, and that Dr. Winegar and his associate had considerable means. It does not appear that his office furniture was ever considered in the premises at all.

In the case relied on for a reversal of the decree the wife necessarily knew that the husband was conducting the business solely on his own account, and that credit was being extended to him solely on the faith of his supposed ownership of the business. He was insolvent, and had no other source of income. His ability to earn money was inseparable from the business.

Here the office furniture was but a small incident in the business of Dr. Winegar. He claimed to be a physician and surgeon of note, and obtained credit from the plaintiff on her belief in the success of the enterprise promoted by him and his associates.

The chancellor found that, under the peculiar circumstances of this case, no fraud was practiced upon the plaintiff, and that the doctrine of equitable estoppel did not apply. It cannot be said that his finding is against the preponderance of the evidence, and the decree will therefore be affirmed.